IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, :

    Plaintiff,

v. : Case No. 3:20-cr-42

JAIME JOSUE ORDAZ, : JUDGE WALTER H. RICE

    Defendant. :

---

DECISION AND ENTRY OVERRULING DEFENDANT'S
MOTION TO SUPPRESS (DOC. #13)

---

Defendant Jaime Josue Ordaz was indicted on one count of possession with intent to distribute 400 grams or more of fentanyl, and 500 grams or more of a mixture or substance containing a detectable amount of cocaine. This matter is currently before the Court on Defendant's Motion to Suppress all tangible evidence seized during a traffic stop, and any statements he allegedly made. Doc. #13. The Court held an evidentiary hearing on July 6, 2020, the transcript of which is docketed as Doc. #17.

I.  **Factual Background**

On March 9, 2020, Ohio State Highway Trooper Jason Barhorst was working in conjunction with the Miami Valley Bulk Smuggling Task Force. They were looking for a semi-trailer coming from California that allegedly contained

narcotics. Shortly after 7:00 that evening, Barhorst was sitting in his cruiser on the shoulder of eastbound I-70 near the exit ramp to Route 235 when he saw a commercial semi-truck, registered in California, pass him.[1] Defendant Jamie Josue Ordaz was driving the truck. Barhorst let several cars pass and then pulled out and began following the truck up the exit ramp. He intended to monitor the truck and watch for a traffic violation so that he could initiate a traffic stop. Doc. #17, PageID##52-59, 84.

Barhorst saw the truck, which was now directly in front of him, turn left onto northbound 235 and cross over I-70. *Id.* at PageID#60. Then, as the truck entered a slight curve in the roadway, it moved into the left-turn only lane. As the truck rounded the curve, Barhorst observed the "outside door of the right side of the trailer" and the "right rear outside tire" of the trailer cross over the center white dashed line into the right lane of traffic. According to Barhorst, that tire remained across the line for several seconds until the road again straightened out. *Id.* at PageID##61-66, 78.

Barhorst testified that, although not visible on the video clip recorded from the cruiser's dash camera, Gov't Exh. 1, he was able to clearly observe this marked lane violation. Doc. #17, PageID##64-65, 81, 83. Believing this to be a violation of Ohio Revised Code § 4511.33, he initiated a traffic stop. *Id.* at PageID##68, 82. Section 4511.33(A)(1) provides, in relevant part, that "[a]

---

[1] The Court infers, from this testimony, that the semi-truck bore California license plates.

vehicle . . . shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic."

## II. Analysis

Defendant Ordaz has moved to suppress evidence of the fentanyl and cocaine that was seized as a result of that traffic stop, and any statements he allegedly made. Doc. #13. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and a traffic stop constitutes a seizure. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Whether the traffic stop is reasonable depends on "whether the officer's action was justified at its inception," and "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

Here, Defendant argues that, because the traffic stop was not justified at its inception, the evidence and statements obtained from that illegal stop must be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). At issue is whether Trooper Barhorst had probable cause to believe that Defendant violated Ohio Revised Code § 4511.33 when, as the truck rounded the curve in the road, the back tire of the trailer crossed the dotted white line that separated the left-turn lane from the right lane of traffic.

3

"[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). This is true even if the officer's ulterior motive is to search the vehicle or its occupants for contraband. *Whren v. United States*, 517 U.S. 806, 813 (1996). Nevertheless, the Sixth Circuit has also cautioned courts "to make sure that police officers act appropriately and not abuse the power legally afforded to them by, among other things, carefully scrutinizing a police officer's testimony as to the purpose of the initial traffic stop." *United States v. Hill*, 195 F.3d 258, 267 (6th Cir. 1999).

Defendant argues that, under the circumstances presented here, Trooper Barhorst lacked probable cause to believe that a traffic violation had occurred. He also argues that, because Barhorst admitted that he was looking for a violation as an excuse to stop the truck, his subjective bias may have affected his perception.

As an initial matter, the Court notes that the video clip of the traffic stop, Gov't Exh. 1, is inconclusive. It does not clearly show a marked lane violation. Nor does it clearly contradict Trooper Barhorst's testimony. The Court rejects Defendant's suggestion that Trooper Barhorst's testimony is suspect because he had already been working for more than twelve hours that day, and he was 200-250 feet behind the truck at the time of the alleged infraction. There is no evidence to support such theories. The Court found Trooper Barhorst's testimony, concerning what he observed, to be credible. Assuming then that Barhorst did, in

4

fact, observe some portion of Defendant's trailer momentarily cross the dotted line separating the left-turn lane from the lane to its right, the question is whether Barhorst had probable cause to believe that this constituted a violation of R.C. § 4511.33, rendering the traffic stop constitutional.

In support of his argument that Trooper Barhorst lacked probable cause, Defendant cites to *United States v. Freeman*, 209 F.3d 464 (6th Cir. 2000), and *United States v. Gross*, 550 F.3d 584 (6th Cir. 2008). Both cases involved a Tennessee statute that, much like Ohio's marked lane statute, requires vehicles to be driven "as nearly as practicable entirely within a single lane." Tenn. Code Ann. § 55-8-123.

In *Freeman*, the Sixth Circuit reversed the district court's order denying a motion to suppress evidence obtained after the traffic stop of a motor home. The police officer allegedly observed the motor home "cross the white line separating the emergency lane from the right-hand lane of traffic for an estimated twenty to thirty feet." 209 F.3d at 465. Believing this to be a violation of § 55-8-123, he initiated a traffic stop. The court held, however, this this "one isolated incident of a large motor home partially weaving into the emergency lane for a few feet and an instant in time" was "insufficient to give rise to probable cause of a traffic violation and warrant an invasion of [defendants'] Fourth Amendment rights." *Id.* at 466. In his concurring opinion, Judge Clay noted that it was windy that day, the driver was rounding a curve in the road at the time of the alleged violation, and the motor home was across the white line for only about 1/3 of a second. *Id.* at

5

467 (Clay, J., concurring). The court held that, because the traffic stop was not justified at its inception, the evidence must be suppressed. *Id.* at 466.

In *Gross*, the Sixth Circuit held that a traffic stop for an alleged violation of § 55-8-123 was not justified at its inception where the officer testified that he observed the vehicle straddle two lanes of traffic for approximately the length of a football field before completely moving from the right lane to the center lane. This occurred at a point in the roadway where, on a steep incline, a third lane opened up to the right for trucks and slower traffic. The court found that the officer could not have reasonably believed that this was a violation of § 55-8-123. It characterized the driver's conduct as "essentially a slow lane change," and concluded that "[w]ithout some further allegation of erratic or improper driving, this simply is not within the scope of the statute." 550 F.3d at 583. The court further noted that it is "not practicable to change lanes without straddling the lanes for some amount of time." *Id.* at 584. Moreover, Tennessee courts had interpreted this statute leniently, finding no violation unless the driver was also driving erratically. *Id.*

Defendant argues that, as in *Freeman*, he was negotiating a curve in the road while operating a large vehicle, one that is incapable of "bending" as it goes around a curve. He contends that, because he was driving "as nearly as is practicable" in one lane, the traffic stop was unreasonable. He points out that, as in *Gross*, there is no evidence that he was driving the truck erratically or improperly.

6

The United States argues that *Freeman* and *Gross* are factually distinguishable. In *Freeman,* the motor home crossed the line for less than one second during windy conditions. Moreover, because it crossed over into the emergency lane where, typically, there are no other cars, this was less dangerous than Defendant's violation which could have interfered with traffic passing him on the right. The United States argues that *Gross* is factually distinguishable because it involved a slow lane change.

Perhaps more importantly, the United States argues that these cases are legally distinguishable because they involved the Tennessee statute, and Ohio interprets its marked lane statute more strictly. In *State v. Mays*, 119 Ohio St. 3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, the Supreme Court of Ohio held that R.C. 4511.33(A)(1) "requires the driver to remain within the lane markings unless the driver cannot reasonably avoid straying." *Id.* at ¶ 18. In contrast to the holding in *Gross*, the Supreme Court of Ohio held that "a traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *Id.* at ¶ 25.

Defendant argues that *Mays* is factually distinguishable in that the officer observed that vehicle drift across the line twice within just a few moments. The United States, however, cites to other cases in which Ohio courts have found that when an officer observes a single crossing of a marked lane, the officer has a reasonable suspicion that the driver has violated R.C. 4511.33. *See State v.*

*Starks*, 2nd Dist. Montgomery No. 28158, 2019-Ohio-2842, 2019 WL 3061751, ¶¶ 7-9 (finding stop proper for a single crossing of a marked lane); *State v. Brown*, 63 N.E.3d 509, 2016-Ohio-1453, ¶ 25 (stop was constitutional where officer observed defendant driving over the white fog line by at least one tire width for thirty to forty yards); *State v. Brush*, 5th Dist. Licking No. 04CA92, 2005-Ohio-3767, 2005 WL 1713334, ¶ 13-14 (vehicle lawfully stopped after driver crossed over the fog line briefly on one occasion); *State v. Campanelli*, 7th Dist. Columbiana No. 14CO23, 2015-Ohio-2332, 2015 WL 3672525, ¶ 27 (when officer witnessed the driver cross the marked lane, he had reasonable suspicion to make a traffic stop).

The Court finds that Defendant has failed to satisfy his burden of proving that the traffic stop was not justified at its inception. Based on the Ohio cases cited above, the Court finds that Trooper Barhorst had probable cause to believe that Defendant violated R.C. § 4511.33(A)(1), as that statute has been interpreted by Ohio courts. Accordingly, the traffic stop was constitutional.

The Court is sympathetic to Defendant's argument that it was simply "not practicable" to keep his large trailer completely in one lane while maneuvering through the bend in the road. Nevertheless, such a defense has little or no bearing on the question of whether the traffic stop was justified. In *Mays*, the Supreme Court of Ohio rejected the defendant's argument that there was no reason to suspect that he had not stayed within his lane "as nearly as [was] practicable." It held that "the question of whether appellant might have a possible defense to a

8

charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." *Mays,* 2008-Ohio-4539, at ¶ 17. *See also United States v. Collazo*, 818 F.3d 247, 255 (6th Cir. 2016) ("[T]he question whether probable cause existed to believe that there was a violation of the statute is different from whether a violation in fact occurred.").

Given that the traffic stop was justified at its inception, there is no basis for suppressing the evidence at issue.

### III. Conclusion

For the reasons explained above, the Court OVERRULES Defendant's Motion to Suppress, Doc. #13, in its entirety.

Date: September 30, 2020

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE